UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

ARNOLD GOLDBERG,

 Debtor

STUART GILMAN, not personally but as Trustee of the ISADORE GOLDBERG REVOCABLE TRUST,

       Plaintiff,

       v.

ARNOLD GOLDBERG, LINCOLNSHIRE PROPERTIES, LP, LPLP, INC., THE PONDS, LLC, LINCOLNSHIRE LIVING & REHAB CENTER, LLC, LINCOLNSHIRE ASSISTED LIVING CENTER LLC, AND LS PROPERTY HOLDINGS, LLC,

       Defendants.

No. 16 C 6993
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In this bankruptcy appeal, Arnold Goldberg (the "Debtor") argues the bankruptcy court erred when it entered a preliminary injunction which restrained and enjoined the Debtor from disbursing and transferring deposits from two real estate entities. For the reasons stated below, I am declining to exercise jurisdiction over this appeal and remanding to the bankruptcy court for further proceedings.

### BACKGROUND

On August 24, 2015, the Debtor filed a Chapter 11 bankruptcy petition. Among the Debtor's assets are his membership and partnership interests in two real estate entities,

1

Lincolnshire Properties Limited Partnership ("LPLP") and The Ponds, LLC ("The Ponds"). The Debtor is the only person authorized to act for either of these entities. He owns 99% of the limited partnership interests of LPLP and is the owner and president of the entity that is LPLP's 1% general partner. He is the manager of The Ponds and owns 51% of the membership interests of that entity.

LPLP and The Ponds own healthcare facilities in Lincolnshire, Illinois. These real estate properties are leased to unrelated third parties with an option to buy. These entities have lease and option purchase agreements with the third parties. This dispute before me deals with the proceeds the Debtor is entitled to under these lease and option purchase agreements (the "Base Rents and Option Deposits").

In particular, the dispute deals with the legal relationship between those proceeds and the Isadore Goldberg Trust. The Debtor's father, Isadore Goldberg, developed and operated health care facilities. In the mid-1990s, the Debtor himself began developing similar facilities. The Debtor relied on financial assistance from his father to take on these health care projects. From 2002 through 2008, Isadore Goldberg loaned his son substantial sums of money.

After Isadore passed away in 2010, Arnold Goldberg entered into a settlement agreement ("the Family Settlement Agreement") with his mother, his siblings, the Isadore Goldberg Trust, and Isadore's estate. This settlement required Arnold to repay the loans his father provided. The Family Settlement Agreement provided that Arnold would settle his loans with payments totaling around $5 million. To ensure that this sum was paid, the Family Settlement Agreement provided the Isadore Goldberg Trust with two forms of security: (1) a security interest in and to Arnold's membership interests in LPLP, The Ponds, and other entities and (2) the collateral assignments of rents and other payments due from certain third parties.

The Debtor's proposed plan of reorganization provides that Debtor intends to fund his plan using the Base Rents and Option Deposits. Stuart Gilman, as the trustee of the Isadore Goldberg Trust, filed an Adversary Complaint in the bankruptcy court on April 4, 2016, challenging whether the Debtor can use the Base Rent and Option Deposits. Gilman alleges that the income from the lease transactions was earmarked by the Family Settlement Agreement to repay the Isadore Goldberg loans and that LPLP and The Ponds are prohibited from making distributions due to the Debtor's mismanagement of the entities.

The Debtor moved to dismiss Gilman's Complaint. On June 22, 2016, the Bankruptcy Court denied the Debtor's Motion to Dismiss, finding that the Isadore Goldberg Trust:

> has pled with sufficient particularity a plausible cause of relief here, that the agreements in question are susceptible to the reading that the plaintiff has alleged, and that if that reading is in fact adjudicated by this Court to be the appropriate reading of those agreements, then the rights that are alleged by the plaintiff and the Court would then be determining could in fact result in the plaintiff having a right to the matters that it is seeking to enjoin, the payments.

After denying the Debtor's motion to dismiss, the bankruptcy court entered temporary injunctive relief, enjoining the Debtor from disbursing and transferring the Base Rents and Option Deposits out of LPLP and The Ponds. The court explained that if Gilman was correct in his interpretation of the Family Settlement Agreement and the agreements between the Debtor and his tenants, then Gilman would have some legal rights to the Base Rents and Option Deposits. Given the bankruptcy court's judgment that it was at least plausible at an early stage in the litigation that Gilman's interpretation of the agreements was correct, the court concluded it would be appropriate to enjoin any payments from LPLP and the Ponds to the Debtor.

The bankruptcy court specifically limited the duration of the injunction, setting it to expire about four months after entering it. The court confirmed at the June 22, 2016 hearing that it would reevaluate the issue of further injunctive relief in October 2016, before the preliminary

3

injunction would expire.

I have before me the Debtor's appeal of that preliminary injunction. The Debtor has not appealed the bankruptcy court's denial of his Motion to Dismiss, nor could he at this stage in the litigation.

## DISCUSSION

Section 158(a) of Title 28 provides, in pertinent part:

(a) The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders, and decrees;

\* \* \* \* \* \*

(3) with leave of the court, from other interlocutory orders and decrees.

28 U.S.C. § 158(a).

The Debtor does not argue that the bankruptcy court has entered a final judgment, order, or decree. Thus this Court could only have jurisdiction under § 158(a)(3) which requires leave of the court. The bankruptcy code provides no guidance on when to grant such leave, so district courts have drawn an analogy to the statute that guides courts of appeals in considering interlocutory appeals, 28 U.S.C. § 1292. *See Matter of Mathieson*, 75 B.R. 340, 341 (N.D. Ill. 1987) (drawing an analogy to the statute regarding appeals from the district court to the court of appeals); *see also First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*, 470 B.R. 364, 371 (E.D. Va. 2012) ("[I]n determining whether to grant leave for an interlocutory appeal, district courts have routinely looked by analogy to the standard set forth in 28 U.S.C. § 1292(b). . . In addition, although with less frequency than they have looked to § 1292(b), district courts have also looked to § 1292(a).")

The parties disagree on how exactly that analogy should be drawn. Section 1292(a)(1) provides that a preliminary injunction is appealable as a matter of right. If § 1292(a)(1) applies here, this Court *must* hear the Debtor's appeal. But § 1292(b) provides that leave to hear an appeal of an interlocutory appeal should only be granted if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If § 1292(b) applies here, this Court would need to first consider whether it *should* hear the Debtor's appeal before reaching the merits.

The Seventh Circuit has not squarely addressed whether appeals of preliminary injunctions, taken under § 158(a) of the bankruptcy code, should be considered analogous to § 1292(a)(1) or § 1292(b). In *United Airlines, Inc., v. U.S. Bank N.A.*, 406 F.3d 918 (7th Cir. 2005), the court held that a temporary restraining order was functionally a preliminary injunction, and concluded that both the district court and appellate court had jurisdiction over the appeal. *Id.* at 923. The court did not specify whether the district court's jurisdiction was by right or by leave of court. *See id.* The appellate court cited to § 1292(a)(1) as the basis of its own jurisdiction over the district court but did not discuss the basis of the district court's jurisdiction over the bankruptcy court. *Id.* The Seventh Circuit has also addressed the related question of whether leave of the bankruptcy court is required for an appeal under § 158(a). *See In re Jartran, Inc.*, 886 F.2d 859 (7th Cir. 1989). In making that determination the court specifically "decline[d] to read anything into [§ 158(a)] other than what it clearly says - that interlocutory appeals may proceed with leave of the district court." *Id.* at 866.

There is no consensus among the other circuits on the issue of whether leave is required to appeal a preliminary injunction in a bankruptcy court. Several circuits appear to turn to

5

§ 1292(a) in the bankruptcy context, considering the appeal of a preliminary injunction without specifically granting leave. *See, e.g.*, *In re Professional Insurance Management*, 285 F.3d 268, 282, n. 16 (3rd Cir. 2002) (finding a district court was authorized to hear an appeal on an injunctive order under § 1292(a)(1)); *Affeldt v. Westbrooke Condominium Ass'n (In re Affeldt)*, 60 F.3d 1292, 1294 (8th Cir. 1995) (applying § 1292(a)(1) to find jurisdiction over a permanent injunction in the bankruptcy court). The policy behind this approach is that "the rulings of a non-Article III bankruptcy court should not be more insulated from appellate review than the rulings of an Article III district court." *In re Reserve Production, Inc.*, 190 B.R. 287, 289–90 (E.D.Tex.1995). But other district courts have held that leave is always required when a bankruptcy court's injunctive order is appealed under § 158(a). *See In re Rood*, 426 B.R. 538, 548 (D. Md. 2010) ("Because the order granting the preliminary injunction is interlocutory, the [Appellants] could appeal from it only upon obtaining leave of the court."); *In re First Republic Grp. Realty, LLC,* No. M47 (SAS), 2010 WL 882986, at *1 (S.D.N.Y. Mar. 2, 2010) ("While the Second Circuit has not expressly determined whether 1292(a)(1) or 1292(b) should apply in these circumstances. . . district courts in this circuit have continued to apply 1292(b) to all interlocutory orders including preliminary injunctions, and the Second Circuit has impliedly sanctioned that approach"). These latter courts reason that requiring leave in all instances is more faithful to "the plain language of Section 158(a)(3)." *In re Quigley Co., Inc.*, 323 B.R. 70, 76 (S.D.N.Y. 2005).

Here, I also adopt the plain language approach and conclude that an appeal of an interlocutory order filed under § 158(a) requires leave of the district court before jurisdiction is appropriate. Thus I agree with Gilman that any interlocutory appeal under § 158(a) must meet the general standards for an interlocutory appeal set out in § 1292(b). This reading is not only

6

consistent with the clear requirement in § 158(a) for leave but also with the Seventh Circuit's hesitance to read additional requirements into § 158(a). *See In re Jartran*, 886 F.2d at 866. It would "make little sense for the bankruptcy appeal statute to group preliminary injunctions with other interlocutory orders but intend for 'leave to appeal' these injunctions to be granted as of right simply because Section 1292 treats interlocutory injunctions differently from other interlocutory orders." *See In re Quigley Co., Inc.*, 323 B.R. at 76–77.

In analogizing to § 1292(b) when considering the present appeal, this Court must only grant leave to appeal if the Debtor's appeal raises a controlling question of law and resolving that question promises to speed up the litigation. *See In re MCK Millennium Ctr. Parking, LLC*, No. 12 B 24676, 2015 WL 2004887, at *2 (N.D. Ill. Apr. 29, 2015). The Debtor has not presented this Court with the kind of question of law appropriate for an immediate appeal, nor would resolution of this question speed up the proceedings in the bankruptcy court below.

For purposes of considering leave to hear an appeal under § 1292(b), the question of law presented to the reviewing court must be "pure" or "abstract." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000). It must be something that the reviewing court can "decide quickly and cleanly without having to study the record." *Id.* The question of contract interpretation, which "may require immersion in what may be a long, detailed, and obscure contract," is not one of these pure questions of law appropriate for immediate appellate review. *Id.*

The question of law raised on this appeal is whether Gilman has a "better than negligible" chance of success on the merits on at least one of the claims in his complaint. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008). Addressing this question would require this Court to review in detail the three agreements that

7

Gilman argues entitle him to declaratory relief. This inquiry would go beyond the sort of quick review appropriate for an interlocutory appeal. Particularly when the bankruptcy court itself has not made any decisive judgment about the ultimate merits of Gilman's claim, a review of this question at this stage of the litigation would be inappropriate.

Furthermore, addressing this question of law at this time would not speed up the litigation below. The injunctive order entered in June 2016 is set to expire at the end of October 2016. The bankruptcy court has already made clear its commitment to return to the issues raised by such an injunction. The purpose of the injunctive relief was merely to preserve the status quo until the parties could come back to the issue with further argument. The upcoming hearing will provide the Debtor with "full opportunity to present any evidence or legal arguments which might convince the bankruptcy judge to release them from the restraints of the order." *Matter of Mathieson*, 75 B.R. 340, 343 (N.D. Ill. 1987). It would not materially advance the proceedings below in any way for this Court to offer an opinion on an expiring injunction when the bankruptcy court has every intention of addressing the same issue without delay. Regardless of what I do here, the parties will return to the bankruptcy court to further litigate the merits of Gilman's claims and future injunctive relief. This appeal will not bring the bankruptcy court any closer to concluding the litigation.

## CONCLUSION

This Court declines to grant leave to appeal the preliminary injunction entered below and remands to the bankruptcy court to proceed with the scheduled hearing to consider the appropriateness of further injunctive relief.

ENTER:
James B. Zagel
United States District Judge

DATE: October 17, 2016